FILED

JUL - 5 2006

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re ) Case No. 06-20424-A-13G
)
NOAH and DEVERY FLORES, ) Docket Control No. SW-1
)
) Date: June 30, 2006
Debtors. ) Time: 9:00 a.m.
)
_____ )

**MEMORANDUM**

General Motors Acceptance Corporation (GMAC) holds a claim secured by an automobile. Its objection to confirmation of the plan proposed by the chapter 13 debtors, Noah and Devery Flores, will be sustained. The plan impermissibly provides for periodic payments that are not "in equal monthly amounts" as required by 11 U.S.C. § 1325(a)(5)(B)(iii)(I).

On its face, section 1325(a)(5)(B)(iii)(I) does not differentiate between types of secured claims. Its application does not appear limited, for instance, to real property or personal property secured claims. Section 1325(a)(5)(B)(iii)(I) refers only to "property to be distributed pursuant to this subsection." If "this subsection" refers to subsection (a)(5) of section 1325, dealing with the treatment of all secured claims, then section 1325(b)(5)(B)(iii)(I) requires equal monthly amounts whenever a plan proposes to make periodic payments on account of



any type of secured claim.

At least one court, however, has read the requirements of section 1325(a)(5)(B)(iii)(I) and section 1325(a)(5)(B)(iii)(II) as being cumulative. That is, if a plan proposes periodic payments, they must be in equal amounts and adequately protect the creditor's interest in its collateral only if the claim is secured by personal property. See In re Perez, 339 B.R. 385, 402, n.18 (Bankr. S.D. Tex. 2006).

The issue of the type of claim entitled to receive periodic payments in equal monthly amounts is not germane to this case. GMAC is secured by personal property, an automobile. Whatever the construction given to section 1325(a)(5)(B)(iii)(I), personal property secured claims are included within its scope.

When a plan provides for periodic payments on account of a secured claim, section 1325(a)(5)(B)(iii)(I) requires that those payments be in equal monthly amounts. GMAC maintains that the plan permits periodic payments in unequal monthly amounts. This is undeniably true. The plan provides for monthly periodic payments of $200 for six months. Then, the payments step-up to $500 a month until GMAC's claim is paid in full. GMAC objects and demands equal monthly payments until its secured claim has been paid in full.

The scant case authority available suggests that GMAC's interpretation of section 1325(a)(5)(B)(iii)(I) is correct. The court in In re DeSardi, 340 B.R. 790, 805-06 (Bankr. S.D. Tex. 2006), after concluding that periodic payments need not commence immediately upon confirmation, opined that section 1325(a)(5)(B)(iii)(I) "require[s] payments to be equal once they

begin, and to continue to be equal until they cease...."

The debtors respond that the plan may define two different periods and specify equal monthly payments within each period.

Unfortunately, the statute is not susceptible to this interpretation. Nothing in section 1325(a)(5)(B)(iii)(I) suggests that a chapter 13 debtor has the latitude to permit variable payments for multiple periods of time.

If the court nonetheless adopted the debtors' interpretation of section 1325(a)(5)(B)(iii)(I), a chapter 13 plan might specify, for example, sixty different periods of one month each and provide a different monthly payment for each month. If the plan may identify two different periods of time, it can specify sixty different periods, or any number of periods between one and sixty.

Thus, the debtors' interpretation of section 1325(a)(5)(B)(iii)(I) has the potential to read the requirement of equal monthly amounts right out of the Bankruptcy Code.

Assuming the court could confirm a plan providing variable payments over multiple periods of time, what standard should the court apply to determine whether the plan satisfies section 1325(a)(5)(B)(iii)(I)? Are multiple periods permissible only if there is no possibility of repayment at a constant rate throughout the plan? Or, is the standard more flexible and amorphous – multiple payment periods are permissible as long as this treatment is "reasonable" or is proposed in good faith?

The debtors suggest that the court adopt a good faith standard. Their suggestion is reminiscent of the now discredited practice of using the "good faith" requirement of 11 U.S.C. §

1325(a)(3) to force chapter 13 debtors to pay an arbitrary minimum dividend to unsecured creditors.

Prior to 1984, many courts labeled plans as being proposed in bad faith if they failed to pay unsecured creditors an "arbitrary minimum-percentage dividend," or "the proposed dividend was either not 'substantial,' not 'meaningful,' not 'substantial and meaningful,' not 'equitable,' or not 'fair and equitable,' or . . . the plan did not represent the debtor's 'best efforts'. . . ." See Oversight Hearing on Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial Law of the House Committee on the Judiciary, 97th Cong., 1st and 2nd Sess. 15-96, testimony of Judge Conrad K. Cyr [footnote omitted].

By seizing upon the good faith requirement of section 1325(a)(3), some pre-1984 courts imposed "subjectively contrived refinements upon subsections 1325(a)(4), (5) and (6), the only confirmation criteria of a quantitative nature to be found anywhere in chapter 13." Id. at 187 [footnote omitted]. And, as is usually the case when courts apply a subjective standard, results differed dramatically. "As between a district in which it is held that a chapter 13 plan must represent the debtor's 'best effort' and return no less than 70% to holders of unsecured claims, and a neighboring district in which a 1% dividend is regarded as sufficient provided it represents the debtor's 'best effort,' the uniformity to be expected in the administration of an important law of commerce enacted by Congress pursuant to its constitutional power 'To establish ... uniform laws on the subject of Bankruptcies throughout the United States' may

reasonably be thought somewhat lacking." Id. at 194-95 [footnotes omitted; emphasis in original].

This court declines to impose its "subjectively contrived refinements on" section 1325(a)(5) as the debtors urge it to do.

The court adds that, if it could confirm a plan that provided variable payment amounts over multiple periods, and regardless of the applicable standard of review, it would not approve this plan. The only reason for paying GMAC's secured claim, as well as another secured claim, at the rate of $200 a month and later increasing the monthly payment to $500, is to permit payment of the debtors' attorneys' fees of $2,100 in the first six months of the plan. However, Schedules B and C indicate that the debtors have over $16,000 in nonexempt bank deposits (not to mention a $5,000 tax refund).[1] The debtors can easily pay their attorney without needlessly complicating the payment of their secured claims.

If the debtors do not wish to invade their savings, they have other alternatives.

The debtors might propose a plan with equal monthly payments and, when it is no longer possible to make those payments, or if the debtors wish to increase the monthly payments, the debtors may propose a post-confirmation modification of the plan. Section 1329(a)(1) permits a modified plan to "increase or reduce the amount of payments on claims of a particular class," and section 1329(a)(2) allows a modified plan to "extend or reduce the time for such payments...." See 11 U.S.C. § 1329(a)(1) &

---

[1] The court takes judicial notice of Schedules B and C.

(a)(2).

The plan payments must be equal only if they are "periodic" payments. So, the debtors might propose, in the alternative, equal monthly payments that are preceded or followed by a payment that is not a periodic payment, such as a lump sum or balloon payment.

Finally, the debtors might stretch the repayment of GMAC's secured claim over a longer period of time, not to exceed the applicable commitment period. The only caveat to such treatment is that the equal monthly payment must "adequately protect" GMAC's interest in its collateral as required by section 1325(a)(5)(B)(iii)(II). In other words, the monthly payments must, at a minimum, keep pace with the depreciation of the automobile securing GMAC's claim.

Therefore, based on the findings of fact and conclusions of law contained in this Memorandum,[2] confirmation of the debtors' chapter 13 plan will be denied. The debtors shall propose an amended plan within 15 days of entry of an order.

A separate order shall be entered.

Dated: 5 July 2006

By the Court

_____
Michael S. McManus, Chief Judge
United States Bankruptcy Court

---

[2] The findings and conclusions contained in this Memorandum supplant those contained in the ruling appended to the minutes of the hearing conducted on June 30, 2006 at 9:00 a.m.

-6-

**CERTIFICATE OF MAILING**

I, Susan C. Cox, in the performance of my duties as a judicial assistant to the Honorable Michael S. McManus, mailed by ordinary mail to each of the parties named below a true copy of the attached document.

Ann Friend
PO Box 830
Modesto, CA 95353-0830

Donald Cram
1 Embarcadero Center #2600
San Francisco, CA 94111

Devery Flores
5740 Comanche Dr
Manteca, CA 95336

Noah Flores
5740 Comanche Dr
Manteca, CA 95336

Russell Greer
PO Box 3051
Modesto, CA 95353-3051

Office of the U.S. Trustee
501 I Street, Room 7-500
Sacramento, CA 95814

Dated: July 5, 2006

_____
Susan C. Cox
Judicial Assistant to Judge McManus